Schwarz, Respondent, vs. Strache and wife, Appellants.*

*January 10—February 5, 1957.*

For the appellants the cause was submitted on the brief of *Joseph E. Tierney* of Milwaukee.

* Motion for rehearing denied, with $25 costs, on April 9, 1957.

For the respondent there was a brief by *Raymond H. Kleis* and *Erwin F. Nell,* attorneys, and *Eldred Dede* of counsel, all of Milwaukee, and oral argument by *Mr. Dede.*

MARTIN, C. J.   In the complaint plaintiff alleged an oral contract entered into about August 1, 1951, with the defendants wherein he agreed to do certain plumbing work in their home; the work was completed on February 11, 1952. On June 27, 1952, plaintiff filed his claim for lien in the amount of $1,493.90 in the office of the clerk of the circuit court for Milwaukee county. No part of the amount claimed was paid and on October 19, 1953, action was commenced to foreclose said lien.

In their answer defendants denied that they entered into a contract with the plaintiff, alleging that they had an oral agreement with one Ed Braaz to install the plumbing; that the reasonable value of the work and materials was not in excess of $500; that the lien claim was not filed within six months from the last date of performance of the work. The answer was filed by Charles L. Goldberg, as attorney for the defendants.

It appears from the record that a number of conciliation conferences were had before Judge CANNON but no settlement was reached. Judge CANNON suggested that a plumber be selected to view the premises and this was agreed upon by the parties. However, it was not until defendants were served with an order of the court that they allowed the inspection to be made. By that time defendants had asked Charles F. Higgins, attorney, to represent them, Goldberg apparently having bowed out because of his clients' failure to co-operate.

Trial of the case was set for April 18, 1956, and adjourned for a month at Higgins' request because his associate was

out of the city. It was then set for May 17th, and in the meantime Higgins attempted, unsuccessfully, to get his retainer from Strache. Strache also advised him he was "busy on the job" and needed another week before he could be ready for trial. On the evening of the 16th, at the court's request, Higgins again contacted Strache. On the 17th Mr. Higgins stated to the court that Mr. Strache had advised him he could not be in court because "he said he had some important work and would take a week," and that "he didn't think he would have a fair trial before you [Judge GORDON]." Strache had failed to get a substitution of attorneys and, although Higgins had asked for a retainer, Strache had not paid him. Higgins had advised Strache he was going to ask to be relieved as counsel. The trial court excused Mr. Higgins from proceeding further with the case. There was no affidavit of prejudice filed and Higgins would not file one. Judge GORDON could not remember having met Strache and all the conciliation conferences were before Judge CANNON.

Considering all the circumstances and noting that the trial had been adjourned a month previously at the instance of defendants' counsel, the court stated:

"I think it is inappropriate to grant any further delays because of this very nebulous concept that the defendant has of other work which he considers more important. So far as the affidavit of prejudice matter, I, of course, cannot explore into what is Mr. Strache's basis for his concern about my trying the case. I am not aware I ever had any dealings whatsoever with him, but beyond that is the fact that, first of all, there is no affidavit presented, and, secondly, there have been proceedings before this branch, although it was by stipulation. Primarily because there is no affidavit presented, I don't feel that the comment by Mr. Higgins that his client was interested in having it heard by some other branch is sufficient within the contemplation of the statute so that I should step aside.

"Accordingly, it is ordered that you be relieved, Mr. Higgins, and it is also ordered that the answer on file be stricken and that the plaintiff be free to proceed at this time as a default."

Upon the proofs offered by the plaintiff the lien was amended to reduce the amount claimed by $106.40, that amount being credited to the defendants for certain material which was returned from the job when it was finished. Judgment was thereafter entered for $1,387.50 on the amended lien. Notice of entry thereof was served on the defendants on May 25, 1956. Defendants then obtained an order to show cause why the judgment should not be re-opened on the ground that it had been obtained through "surprise, mistake, and excusable neglect" of the defendant Milton Strache. On July 20th the court denied the motion.

Strache stated in his affidavit supporting the motion that he had actively participated in the defense of the action and in the conciliatory proceedings; that he did not know the case was set for trial on April 18th and adjourned at Higgins' request; that he was not advised of the trial being set on May 17th until the previous evening, at which time he told Higgins the time was too short to prepare for trial and that he had a job on the 17th which he might lose if he did not report for work; that he asked Higgins to seek an adjournment but heard nothing more of the matter until served with the notice of entry of judgment.

In refusing to reopen the judgment the trial court called attention to the long delay it had experienced in getting the case on for trial and stated:

"I do not believe that all the circumstances of this case and the history that its had demonstrate that the defendant husband, and the same would apply to his wife, has been the subject of inadvertence or excusable neglect. I think that the proceedings that were held in this courtroom on the 17th of May demonstrate how fully and exhaustively the court

and counsel for both sides explored the question of the defendant's availability for trial. Mr. Higgins made statements in that hearing which are strong statements, strong in the sense that they make it clear that he advised his client of my direction that the matter would come on for trial and reported that his client declined to either co-operate with him or to pay his fees, but, rather, gave as his reason for not being ready to come to trial the shortness of time of notice and his obligations in the commercial world elsewhere. . . .

"While there is some differential, some variance between Mr. Higgins' statements and Mr. Strache's affidavit, they are not of such a character as to satisfy me that Mr. Higgins' position is not basically correct."

Strache has stated no facts establishing surprise, mistake, or excusable neglect. If the judgment should be reopened there is no reason to suppose that he would now exhibit a more co-operative spirit than he has previously shown. On the contrary, if having other work to do is considered excusable neglect, it is quite likely that Mr. Strache would be very busy in the future. We see no abuse of discretion in the court's refusal to reopen.

What was said by this court in a similar situation in *Stilson v. Rankin* (1876), 40 Wis. 527, 531, is appropriate here:

"The facts do not appear to us to establish a case of surprise, mistake, or excusable neglect for the respondent. And they impress us with the belief that the *ex parte* trial and judgment deprived him rather of an opportunity to postpone the trial and judgment, than of the opportunity of making a valid and meritorious defense."

One of the most-serious problems confronting courts everywhere is the congestion caused by unnecessary delays in the trial of cases. By May 17th this case had been pending in the circuit court for Milwaukee county for thirty-one months. The record shows that during that time the court had exerted strenuous efforts to dispose of it but that

its efforts were constantly met by defendants' refusal to co-operate. To honor defendants' position under the circumstances of this case would be to defeat the conscientious attempts of the court to expedite the administration of justice.

*By the Court.*—Order affirmed.